**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**MARGARET BOWERS**

v. 2:25-cv-354-NPM

**COMMISSIONER OF SOCIAL SECURITY**

---

# OPINION AND ORDER

Plaintiff Margaret Bowers seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the administrative proceedings. (Doc. 12). Bowers filed an opening brief, and the Commissioner responded. (Docs. 16, 27). Bowers fails to show any reversible error, so the Commissioner's decision is affirmed.

## I. Eligibility for Disability Benefits and the Administration's Decision

### A. Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than twelve months.[1] Depending on its nature and severity, an impairment limits

[1] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 404.1505, 404.1509.

exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[2] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[3]

**B. Factual and procedural history**

On August 16, 2021, Bowers applied for disability insurance benefits. (Tr. 167). She asserted an onset date of January 1, 2014, alleging disability due to the following: left knee pain, neck injury, back injury, anxiety, shoulder pain, depression, chronic pain disorder, cervical radiculopathy, neuralgia, and headaches. (Tr. 167–169, 204, 218). As of the alleged onset date, Bowers was 37 years old, had an 11th-grade education, and possessed a "Class B" commercial driver's license with air brake and passenger endorsements. She previously worked as a school bus driver and secretary at a mechanic shop she co-owned with her husband. (Tr. 38–39, 215,

[2] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)–(iv) (discussing the various categories of work-related abilities), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 404.1545(b)–(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[3] *See* 20 C.F.R. § 404.1511.

218–219, 227).

On behalf of the administration, a state agency[4] initially reviewed and denied Bowers's application on May 6, 2022, and, upon reconsideration, on June 26, 2023. (Tr. 60, 66). At her request, Administrative Law Judge (ALJ) Anne Sprague held a hearing during which Bowers was represented by an attorney. (Tr. 29–59). On April 11, 2024, the ALJ issued a decision finding Bowers not disabled. (Tr. 14–28). The administration's Appeals Council denied her request for review. (Tr. 1–6). She then brought the matter to this court, and the case is ripe for judicial review.

### C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r*, 616 F. App'x 931, 933 (11th Cir. 2015);[5] *see also* 20 C.F.R. § 404.1520(a)(4).

---

[4] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 404.1613(a).

[5] Unless otherwise noted, we accept all alterations and omit all citations, footnotes, and internal quotation marks when quoting judicial decisions.

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r*, 906 F.3d 1353, 1364 (11th Cir. 2018). "Because Social Security hearings basically are inquisitorial in nature, it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* "Thus, the ALJ has a basic duty to develop a full and fair record." *Id.*

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 404.303 ("Entitled" means that a person has applied and has proven his or her right to benefits for a period of time.); 404.1512(a)(1) (the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (the regulations "place a very heavy burden on the claimant"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359.

At step one of the evaluation, the ALJ found Bowers had not engaged in substantial gainful activity from her amended alleged onset date of January 1, 2014, through her date last insured, December 31, 2016. (Tr. 20). At step two, the ALJ characterized Bowers's impairments as: "degenerative disc disease of the cervical spine, degenerative changes in the right shoulder, and obesity." *Id.* The ALJ determined that Bowers did not have "an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments." *Id.* Thus, for purposes of the Act, the ALJ concluded Bowers was not disabled from January 1, 2014, through December 31, 2016. (Tr. 22).

## II. Analysis

Bowers contends the ALJ committed reversible error by:

1) finding that Bowers did not have a medically determinable mental impairment;

2) failing to properly evaluate the opinion of vocational evaluator Rick Robinson, Ph.D.;

3) failing to consider Bowers's insomnia and varicose veins; and

4) allowing vocational rehabilitation counselor Carrol L. Warren to testify at Bowers's hearing since she was not qualified to testify as an expert.

### A. Standard of review

We "may not decide the facts anew, make credibility determinations, or

reweigh the evidence." *Buckwalter v. Comm'r*, 997 F.3d 1127, 1132 (11th Cir. 2021). While a court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), our review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004).

Substantial evidence is a more-than-a-mere-scintilla standard. "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 108. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means we must affirm, even if we would have reached a contrary result as finder of fact, and even if we find that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r*, 963 F.3d 1317, 1323 (11th Cir. 2020).

### B. Substantial evidence supports the ALJ's step-two finding that Bowers did not have a medically determinable mental impairment.[6]

[6] Bowers suggests the ALJ ignored objective medical evidence of a mental impairment from physician assistant Christopher Robertson. (Doc. 16 at 1). But she does so in a perfunctory manner without argument and authority. Therefore, we deem this issue abandoned. *See, e.g., Singh v. U.S.*

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(c). The claimant's impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1521. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. *Id.* An ALJ cannot rely only on a "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment." *Id.*; *see also Edwards v. Kijakazi*, No. CA 20-0614-MU, 2022 WL 99984, *4 (S.D. Ala. Jan. 10, 2022) (quoting SSR 96-4p, 1996 SSR LEXIS 11) ("A 'symptom' is not a 'medically determinable physical or mental impairment' and no symptom by itself can establish the existence of such an impairment.").

After establishing that the claimant has medically determinable impairments, the ALJ will determine whether the impairments are severe. 20 C.F.R. § 404.1521. An impairment is not severe if the abnormality is so slight and its effect so minimal

---

*Att'y Gen.*, 561 F.3d 1275, 1278-79 (11th Cir. 2009) (explaining that "simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue"); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party "abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority"); *Sorter v. Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (same); *Figuera v. Comm'r*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (same).

that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. *Schink v. Comm'r*, 935 F.3d 1245, 1265 (11th Cir. 2019). At bottom, "[t]his step is a threshold inquiry and allows only claims based on the most trivial impairments to be rejected." *Id.*; *see Colley v. Comm'r*, No. 6:25-cv-01182-RBD-NHA, 2026 WL 2751299, *12 (M.D. Fla. May 12, 2026) (Step Two "acts as a filter; if no severe impairment is shown, the claim is denied[.]").

Here, the ALJ observed that Bowers alleged she was disabled due to depression and anxiety, among other things, but that in other reports Bowers elaborated on her "pain" from physical health concerns and placed little emphasis on symptoms related to mental health. (Tr. 21, 218, 231). The ALJ considered Bowers's treatment records, which she found revealed generally normal findings on exam: appropriate affect and demeanor; normal thought and perception; alert and oriented x 3; intact recent and remote memory; and no apparent distress. (Tr. 21–22, 481, 486, 492, 503, 583, 605, 609, 761, 764, 775, 783, 1237, 1292, 1295, 1348). Finally, the ALJ noted that Bowers had failed to provide any objective medical evidence from an accepted medical source to establish the existence of a mental impairment during the alleged period of disability. (Tr. 22).

The ALJ also considered licensed mental health counselor Barbara Fallow's opinion. On February 24, 2023 (after the state agency had initially denied the

application), Fallow completed a three-page, check-the-box "Mental Residual Functional Capacity Assessment." (Tr. 1135–1137). Tracking with the methodology used by ALJs to rate the severity of mental impairments, the form asked for an evaluation of the four basic domains of mental functioning: (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation.[7] But in a departure from the regulatory framework, the form asked for limitations to be assessed using a five-point scale: (1) minimal or none; (2) occasional or mild; (3) moderate; (4) marked; or (5) constant.[8]

Fallow indicated that Bowers had predominantly constant, marked, and moderate impairments in all four basic domains of mental functioning. (Tr. 1135–1136). Fallow did not provide an explanation or cite any objective findings in support of her opinion. When asked to provide additional information that would support her assessment, Fallow stated that Bowers "has been diagnosed with Bipolar and is on medication. However, both her anxiety and her depression interfere with cognitive thought processing over 70% of the time." (Tr. 1136). In addition, when asked since when has Bowers been disabled from substantial gainful employment, Fallow noted "20 years," and answered "yes" when asked whether Bowers was

---

7 *Cf.* 20 C.F.R. § 404.1513(a)(2)(ii).

8 *But see* 20 C.F.R. § 404.1520a(c)(4) and 20 C.F.R. Part 404, Subpart P, Appendix 1, Part 4, Section 12.00(F)(2) (using a different five-point scale).

disabled when she last stopped performing substantial gainful work. *Id.*

The ALJ found Fallow's opinion—which suggests that Bowers had been disabled for twenty years due to moderate to marked mental limitations—to be "poorly supported and inconsistent" with the record evidence. (Tr. 22). The ALJ observed that mental status exams and findings during the alleged disability period did not, in any way, support such significant limitations. *Id.* Furthermore, the ALJ concluded that the evidence did not show that a medically determinable mental impairment had been established by an "acceptable medical source" within the period of time at issue. *Id.* Thus, the ALJ found Fallow's opinion unpersuasive. *Id.*

Lastly, the ALJ concluded that the opinions of state agency consulting psychologists Pamela D. Green and David Clay were persuasive[9] because they were better supported and consistent with the record evidence. (Tr. 22). Each psychologist noted that Bowers had reported experiencing anxiety, but that she had no psychiatric treatment history, her treatment records showed normal mental findings on exam, and her daily activities included cooking, managing her finances, socially engaging with others, and performing household chores. (Tr. 64, 70). Thus, each psychologist noted that there is "insufficient evidence to complete this claim." *Id.*

On that score, the ALJ properly considered the evidence when she determined

---

[9] On appeal, Bowers does not contest the ALJ's conclusion that Green and Clay's opinions were persuasive. (*See* Doc. 16).

that Bowers does not have a medically determinable mental impairment, and the ALJ's conclusion rests upon more than a scintilla of relevant evidence that a reasonable person would accept as adequate. *See Biestek*, 587 U.S. at 103.

Nevertheless, while recognizing that counselor Fallow is not an acceptable medical source,[10] Bowers asserts that Fallow's assessment still demonstrates that she had a mental impairment that significantly affected her ability to work before December 31, 2016, the date she was last insured. (Doc. 16 at 16–19). Bowers points to Fallow's unsupported statement that for the past twenty years, she had constant, marked, and moderate limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *Id.* at 16.

In essence, Bowers's appeal asks the court to do exactly what it cannot: reweigh the evidence. *See Buckwalter*, 997 F.3d at 1132. The ALJ's finding that Fallow's opinion was poorly supported meets the substantial evidence standard. Fallow did not explain the basis of her opinion concerning Bowers's limitations. Rather, the assessment form is largely in check-the-box format with conclusory statements that fail to cite to any objective clinical findings or provide insight into the reasons behind the opinion. "Courts have found that such conclusory forms are

---

[10] The applicable regulations define an "acceptable medical source" as including a "licensed psychologist." 20 C.F.R. § 404.1502(a)(2) (emphasis supplied). A licensed psychologist includes a "licensed or certified psychologist at the independent practice level," 20 C.F.R. § 404.1502(a)(2)(i), but it does not include a counselor, even one with a Ph.D. degree. Therefore, Fallow is not an acceptable medical source and, thus, cannot give a medical opinion.

'weak evidence at best.'" *Stewart v. Comm'r*, No. 6:19-cv-413-Orl-LRH, 2020 U.S. Dist. LEXIS 104485, *12 (M.D. Fla. June 15, 2020) (citing cases). So the ALJ did not err.

Bowers otherwise cites evidence in the record that may tend to corroborate Fallow's opinion. In particular, she attempts to buttress Fallow's assessment with "psychological progress notes" from Dr. Lynn R. Bernstein, which state that Bowers began treatment in February of *2021* for post-traumatic stress disorder (PTSD), major depression, and "anxiety disorder OCD." (Tr. 315). But under a substantial evidence standard, this will not suffice. To be eligible for disability insurance benefits, Bowers must demonstrate disability on or before the date she was last insured. *Moore*, 405 F.3d at 1211. Bernstein's progress notes that discuss mental health treatment beginning in 2021 clearly do not demonstrate disability during the pre-2017 period of time at issue here. Furthermore, Bowers "must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *See Sims v. Comm'r*, 706 F. App'x 595, 604 (11th Cir. 2017); *see also Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) ("[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."). Bowers has failed to show any absence of evidence. Ultimately, the ALJ explained that Fallow's extreme limitations were unsupported and inconsistent with the record.

This is all that is required. *See Cook v. Comm'r*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, *3 (M.D. Fla. Apr. 6, 2021) ("the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record[.]"). So the court must decline Bowers's invitation to reweigh the evidence.

**C. The ALJ properly evaluated the opinion of licensed mental health counselor Rick Robinson, Ph.D.**

Upon referral from Bowers's counsel, Robinson evaluated Bowers on December 5, 2012, to determine her vocational earning capacity, and issued a vocational evaluation report on January 12, 2013. (Tr. 1174). Robinson reviewed Bowers's personal and work history, medical treatment records dating from 2009 through 2012, and her activities of daily living. (Tr. 1174–1180). He also conducted tests such as the "Wide Range Achievement Test 4" and "Wide Range Intelligence Test," and analyzed Bowers's transferable skills and employability. (Tr. 1180–1189).

Based on his evaluation, Robinson concluded within a reasonable degree of vocational certainty that Bowers has: cognitive ability in the low average range; manual dexterity bilaterally that is very low; permanent impairments that are likely to impact her vocational functioning in the future; her principal vocational barriers related to her physical impairments are headaches, upper extremity limitations, and neck pain, all of which impact her ability to perform sedentary to light work on a

consistent and ongoing basis; she has marginal transferrable skills to sedentary to light work; and her vocational outlook is guarded, unless she can gain better control of her pain-related symptoms stemming from headaches and upper extremity function. (Tr. 1190–1191).

For claims filed on or after March 27, 2017—such as this one—an ALJ must use the same set of factors to assess all medical opinions. *See* 20 C.F.R. § 404.1520c. No longer is an ALJ to afford specific evidentiary weight to certain sources' opinions, such as treating physicians. *Id.* As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. *Id.* at § 404.1520c(c). Supportability and consistency are the two most important factors. *Id.* at § 404.1520c(b)(2). Supportability refers to "the objective medical evidence and supporting explanations presented by a medical source...to support his or her" opinion. *Id.* at § 404.1520c(c)(1). Consistency requires "the evidence from other medical sources and nonmedical sources" to be consistent with the medical opinion presented. *Id.* at § 404.1520c(c)(2). Thus, persuasiveness, rather than weight, matters when assessing a medical opinion. 20 C.F.R. §§ 404.1520c, 404.1527(c).

The ALJ found Robinson's opinion to be "unpersuasive" because it was proffered well before Bowers's alleged onset date—January 1, 2014. (Tr. 22). The ALJ further found that Robinson's opinion that Bowers suffered from "permanent impairments" that "impact her ability to perform sedentary and light work on a consistent and ongoing basis" to be conclusory and unrelated to the alleged disability period at issue, given that Bowers conceded that any alleged disability did not commence until January 2014. *Id.*

As an initial matter, Bowers maintains that the ALJ's reasoning as to the relevancy of Robinson's opinion was flawed because it was proffered just one month after the onset date recommended by the SSA—December 31, 2012. *Id.* at 12–14. Thus, Bowers asserts that the ALJ erred in finding Robinson's opinion unpersuasive on this basis. *Id.*

But Bowers, under the advice and consent of her counsel, voluntarily amended her alleged onset date to January 1, 2014.[11] (Tr. 17, 22, 204). As such, the ALJ did not err by considering January 1, 2014 as the onset date, rather than the SSA's recommendation of December 31, 2012. Nor did the ALJ err in finding Robinson's opinion unpersuasive because it was not related to the period of disability. To be sure, the burden was on Bowers to establish her entitlement to benefits during the specific time period between the alleged onset date and the date last insured.

[11] Bowers initially alleged disability beginning on October 20, 2009. (Tr. 17, 164).

*Cassidy v. Comm'r*, 383 F. App'x 840, 842 (11th Cir. 2010). Furthermore, pre-onset date medical opinions are inherently of limited relevance to the question of disability during that period. *See, e.g.*, *Santos v. Comm'r*, 731 Fed. Appx. 848, 856 (11th Cir. 2018) (stating that medical opinions were of limited relevance because they predated claimant's alleged disability date); *Kranz v. Comm'r*, No. 8:20-CV-2714-TPB-SPF, 2022 WL 3867856, *6 (M.D. Fla. June 22, 2022) (same), *report and recommendation adopted*, 2022 WL 3867558 (Aug. 30, 2022); *Naberhaus v. Kijakazi*, No. 8:20-CV-2190-SPF, 2022 WL 897540, *11 (M.D. Fla. Mar. 28, 2022) (same). In sum, the ALJ did not err by concluding that the opinion was unpersuasive, in part, because it was proffered approximately one year before the alleged onset of disability. *See Hill v. Comm'r*, No. 2:24-CV-64-KCD, 2024 WL 4719493, *3 (M.D. Fla. Nov. 8, 2024) ("To be sure, a medical opinion unrelated to the disability period can be rejected.").

Next, Bowers challenges the ALJ's finding that Robinson's opinion was "entirely conclusory," arguing that Robinson offered ample support for his findings. (Doc. 16 at 14). Bowers points to Robinson's observation that she shifted frequently during his exam to make her upper right extremity more comfortable, and she stretched her neck while seated, to lend support for his finding that Bowers had permanent physical impairments. *Id.* Moreover, Robinson conducted the Wide Range Intelligence Test, which yielded results indicating Bowers had a general IQ

in the low average range. *Id.* This argument is unconvincing.

While Robinson may have observed that Bowers frequently shifted during the exam or stretched her neck, he did not provide any explanation or cite objective medical evidence to support his conclusion that Bowers has permanent impairments which impact her ability to perform sedentary to light work. *See* 20 C.F.R. § 404.1520c(c)(1). Indeed, it is telling that Bowers merely emphasizes Robinson's observations during the evaluation, and not any objective medical evidence in his nineteen-page evaluation, to demonstrate that Bowers had severe physical impairments. So the ALJ did not err in finding Bowers' opinion to be conclusory, and thus unsupported.

Finally, Bowers asserts that Robinson's opinion was consistent with the record evidence from other sources showing physical impairments.[12] (Doc. 16 at 15–19). Bowers points to a January 2013 MRI showing that she had right-shoulder rotator cuff tendinopathy and a partial insertional tear (Tr. 343), and that right-shoulder exams from December 2012 through January 2013 revealed pain on

---

[12] Regarding her physical impairments, the ALJ observed that the evidence shows that Bowers had:

> [M]edically determinable physical impairments—degenerative disc disease of the cervical spine, degenerative changes in the right shoulder, and obesity. (Tr. 22). However, the claimant has not satisfied her burden to provide sufficient medical and other evidence regarding her medical impairments (20 CFR 404.1512(a) and 404.1516). In arriving at such a finding, I acknowledge and have considered the guidance in SSR 19-2p regarding obesity. (Tr. 22).

palpation of the biceps worsening with abduction, internal rotation, and flexion, and limited active range of motion with external rotation. (Tr. 489, 492, 495). From January 2013 through November 2014, treatment records reveal Bowers also experienced tenderness in the lumbar paraspinous muscle bilaterally and sensation hypoesthesia in the right ulnar nerve distribution. (Tr. 883, 889, 895, 904, 907, 912, 925, 930, 942). In addition, she experienced spasms of the left and right cervical paraspinal and thoracic muscles. (Tr. 866, 871, 877, 878, 883, 889, 912, 930). And on December 3, 2014, she underwent right shoulder arthroscopy. (Tr. 797–813). Lastly, from October 2012 through December 2016, she experienced knee pain. (Tr. 767, 777, 780, 1181, 1292).

Nevertheless, the ALJ discussed this evidence along with a January 2011 MRI of Bowers's cervical spine that showed "minimal" disc protrusions at multiple levels. (Tr. 21, 319–582). The ALJ also considered treatment records from Dr. Joseph Shaughnessy—spanning the entire disability period—but found that the records revealed "scant abnormal clinical signs/findings on examination of [Bowers's] musculoskeletal and neurological systems (save for an occasional reference to tenderness in the lumbar spine and hypoesthesia in the right ulnar nerve distribution)." (Tr. 21, 1204–1446).

Although Bowers may disagree with the ALJ's characterization of record evidence, it does not change the fact that the ALJ's characterization is not inaccurate.

*See Shoemaker v. Comm'r*, No. 6:22-cv-1046-DCI, 2023 WL 5625298, *3 n.8 (M.D. Fla. Aug. 31, 2023) ("Claimant cannot prevail by simply substituting [her] own characterization of the record for the ALJ's; when the record supports multiple readings and the ALJ's chosen reading is a permissible one, the Court must affirm…."). In short, substantial evidence supports the ALJ's finding that Robinson's opinion was conclusory and unpersuasive, and the court may not re-weigh the evidence as Bowers seeks. *See Buckwalter*, 997 F.3d at 1132.

### D. The ALJ did not err by failing to consider Bowers's insomnia or varicose veins.

Bowers argues that despite documented treatment for insomnia and varicose veins, the ALJ erred by failing to evaluate the severity of these conditions at step two of the sequential analysis. (Doc. 16 at 19–20). This argument is without merit.

Bowers, who was represented by counsel, did not allege—in either her application for benefits or at her hearing before the ALJ—that insomnia or varicose veins were a basis for her disability. (Tr. 31–52, 218). So "the ALJ was under no duty to consider [these] alleged impairment[s]" much less evaluate the severity or to what extent the impairments affected Bowers's ability to work. *Duffy v. Comm'r*, 736 F. App'x 834, 837 (11th Cir. 2018) (the ALJ had no duty to consider an impairment that the plaintiff did not allege in her disability application or at the hearing); *see also Sullivan v. Comm'r*, 694 F. App'x 670, 671 (11th Cir. 2017) (same); *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (same);

20 C.F.R. § 404.303 (claimant must apply for and prove disability).

### E. Because the ALJ did not rely upon vocational expert Carrol L. Warren's testimony, remand is not warranted.

Bowers argues that Carrol L. Warren was not qualified to testify as a vocational expert in this matter because her curriculum vitae reveals that she worked as a vocational rehabilitation counselor from 2001 to 2005, exclusively in academia, in an administrative capacity. (Doc. 16 at 24–25). Therefore, Bowers asserts that remand is warranted. *Id.* at 25. This argument is specious at best.[13]

Whether Warren was qualified to testify as a vocational expert has no bearing on the ALJ's finding that Bowers was not disabled. The ALJ's analysis of Bowers's claim did not progress past step two of the sequential evaluation. (Tr. 17–23). So the ALJ did not rely upon Warren's vocational testimony to determine whether Bowers was capable of performing any past relevant work or other work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1560(a)(2), 404.1566(e) (the ALJ may utilize the services of vocational experts or vocational specialists when determining whether a claimant can perform her past relevant work or other work at steps four and five, respectively). Nevertheless, Bowers seemingly

[13] Counsel of record for Bowers are well acquainted with the regulatory standards and vernacular. We admonish them to be mindful of their Rule 11 obligations and the court's authority to impose sanctions on its own initiative. Reliable and persuasive authorities have assessed the current value of the court's time at about $2,100 per hour, and preposterous or spurious arguments wrongfully divert our limited resources from resolving legitimate disputes. Too often, alleged points of error advanced by this law firm—in this case and others—are best left on the cutting-room floor.

glosses over this critical point and advances an unsupported argument that remand is warranted because Warren was unqualified to testify.

But even if the ALJ had relied upon Warren's testimony, any objection to Warren's qualifications has been forfeited. Although Bowers asserts that she filed pre-and post-hearing memoranda raising multiple objections to Warren's qualifications and testimony, the record does not support this assertion. (Doc. 16 at 24, citing Tr. 284–287). Indeed, a thorough review of the record reveals that Bowers's sole objection was a *post-hearing* letter concerning Warren's testimony about the job of a "router," which Bowers claimed was obsolete. (Tr. 287). Because Warren denied any knowledge of this fact, Bowers maintained that Warren's testimony should be rejected in its entirety. *Id.* But Bowers and her counsel never challenged Warren's qualifications as a vocational expert before, during, or after the hearing. (Tr. 32, 57–58). In fact, plaintiff counsel confirmed during the hearing that he had no objection to Warren appearing as a vocational expert. (Tr. 32). Thus, any challenge to Warren's qualifications is a moot point. *See Pace v. Comm'r*, 760 F. App'x 779, 782 (11th Cir. 2019) (finding that a reasonable person would accept the expert's testimony in light of the claimant not objecting to it at the hearing); *see generally*, *Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was not raised before the administrative agency).

## III. Conclusion

Upon consideration of the submission of the parties and the administrative record, substantial evidence supports the ALJ's decision, and there was no error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment in the Commissioner's favor, terminate all scheduled events, and close the case.

**ORDERED** on October 9, 2026

NICHOLAS P. MIZELL
United States Magistrate Judge